## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

JEAN BERNARD GERMAIN      *

Plaintiff      *

v      *      Civil Action No. JFM-15-349

RICHARD MILLER, *et al.*      *

Defendants      *

\*\*\*

### MEMORANDUM

On April 3, 2015, this court issued an order that in pertinent part granted plaintiff Jean Germain's motion for preliminary injunctive relief, subject to reconsideration upon receipt of further evidence. ECF 16. Currently before the court is defendants' motion to dismiss or for summary judgment (ECF 24), which plaintiff opposes (ECF 26). In addition, plaintiff has filed motions to appoint counsel,[1] for a court ordered examination, and for discovery pending summary judgment. ECF 27, 28, and 29. The court finds a hearing is not necessary to resolve the matters pending before it. *See* Local Rule 105.6 (D. Md. 2014). For the reasons that follow, the preliminary injunction shall be lifted, defendants' motion to dismiss or for summary judgment shall be granted, and plaintiff's motions shall be denied.

### Background

Plaintiff Jean Germain ("Germain") was granted preliminary injunctive relief based on evidence he submitted to this court in reply to defendants' response to show cause regarding the inmate with whom he shared a cell, Ron Bailey. Defendants claimed that there was no record of

---

[1] Plaintiff's motion to appoint counsel (ECF 27) will be denied for two reasons. First, in the numerous cases he has filed plaintiff has demonstrated the wherewithal to either articulate the legal and factual basis of his claims himself or secure meaningful assistance in doing so repeatedly. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). Second, plaintiff was appointed counsel in a prior case and refused to meet with counsel after she traveled to Cumberland, Maryland for the express purpose of meeting with plaintiff to discuss the case; counsel was thereafter excused from the case. *See Germain v. Wexford Health*, Civil Action JFM-13-382 (D. Md.). This court declines to again place such a burden on private counsel.

problems between Germain and Bailey (ECF 11 at Ex. 1).  Germain disputed that assertion and this court observed:

> Plaintiff disputes the assertion that sharing a cell with Bailey has not been problematic and provides supporting documentation establishing that he has complained about Bailey numerous times and has engaged in a hunger strike as a protest for the cell assignment.  Supporting affidavits provided by plaintiff indicate that Bailey suffers from mental illness; habitually bangs on the cell door or toilet all night long; and has violently attacked other inmates.  Plaintiff has been issued disciplinary notices for attempting to refuse the cell assignment with Bailey and has filed administrative remedy procedure requests complaining about the living situation he has been forced to endure.  Included in those descriptions of plaintiff's protests are uses of force against him, including mace, and assertions that his assignment to segregation was the result of refusing housing assignments.

ECF 16 at p. 2, citing ECF 13 and 14..  Thereafter, this court concluded a genuine dispute of material fact existed regarding whether Germain's safety was being disregarded by correctional staff and, if so, whether Germain is entitled to the permanent injunctive relief he seeks.  ECF 16 at p. 2.

This court notes that the instant case is not the first time Germain has alleged that being placed in a cell with another inmate causes him to experience extreme anxiety attacks.  *See Germain v. Shearin*, Civil Action JFM-09-3097 (D. Md. 2010) (claimed entitlement to a single cell due to anxiety caused by previous attack by cellmate);  *Germain v. Shearin, et al.*, Civil Action JFM-11-1613 (D. Md.) (claim that forced double celling caused suicide attempt).  In both prior claims Germain traced his anxiety back to a sexual assault against him that occurred in 1998 at Jessup Correctional Institution ("JCI").  Germain explained that his cellmate, John Campbell, sexually assaulted him and Germain responded by stabbing Campbell over 100 times.[2]

---

[2]     Germain received an additional prison sentence for the assault on Campbell. ECF 24 at Ex. 1, p. 10.

Defendants in the instant case note that on October 9, 2014, a Prison Rape Elimination Act (PREA) intake screening was done with Germain and, at that time, he informed his case manager about the 1998 assault by Campbell. ECF 24 at Ex. 2, p. 1. Germain's assault on Campbell, as well as a 1999 incident[3] where Germain was charged with an institutional rule violation for engaging in sex with another inmate, were also noted during the intake screening. *Id.* at Ex. 1, p. 11. Germain is described as being "adamant" that he requires a single cell in order to remain safe, despite the fact that Campbell is listed as his enemy and is not housed in the same prison as Germain. *Id.* at Ex. 2, p. 3.

Defendants assert, as they have in past cases where Germain has claimed a need for single cell housing based on his psychological needs, that Germain has no known psychological condition that requires a single cell. ECF 24 at Ex. 7, p. 1. Bruce Liller, Chief of Psychology at NBCI, states that Germain's "report of symptoms do not match his actions and there is evidence to suggest [Germain] creates an uncomfortable situation for a cellmate in order to run him out of the cell." *Id.* Liller states that psychology staff have stressed to Germain the importance of double celling and how adjusting to it applies to progressing through the system, but Germain has remained uncooperative with any efforts to assist him in adjusting. *Id.* at p. 2. Liller further notes that staff have taken the unusual step in Germain's case to allow him to choose a cellmate, but to no avail. *Id.* , *see also* Ex. 2, p. 3 (noting Germain was offered individual counseling to develop coping skills in order to live with another inmate).

---

[3]     Defendants do not provide documentation supporting this alleged incident even though they are the custodians of such records. Germain denies the incident ever occurred and provides a memorandum from Case Manager C. Zies that the 1999 incident actually involved an incident where Germain was "found guilty of masturbation towards (sic) a staff member." ECF 26-3.

3

Liller's assessment is echoed by Lauren Beitzel, LCPC,[4] also with the psychology department.  In Beitzel's encounter with Germain regarding his stated interest in assignment to the Special Needs Unit (SNU), she noted that Germain became defensive when he was provided with any feedback.  ECF 24 at Ex. 7., p. 3.  Beitzel expresses skepticism regarding Germain's self-reported panic attacks because when Germain describes them, the symptoms are "very typical and without personalization."  *Id.*  The anxiety noted was Germain's anxiety over keeping a single cell at NBCI.  *Id.*  It is Beitzel's opinion that Germain's symptom presentation does not warrant special housing accommodation.  *Id.*

Defendants deny any statement attributed to correctional officers advising Germain he would need to either submit to unwanted sexual advances from a cell partner or fight.  ECF 24 at Ex. 4 and 5.  They maintain that encouraging inmates to fight endangers not only the inmate population, but also the safety of staff.  *Id.*  Specifically, defendant Officer Soltas denies telling Germain that he did not say that "'one way or another' [Germain] would 'be housed with Ron Bailey so fight or fuck.'"  *Id.* at Ex. 5, p. 1.  There has been no report that Germain is targeted for violence or sexual assault by another inmate.  *Id.* at Ex. 4, p. 2.

Assignment to protective custody or special housing is reserved for inmates who require separation from general population.  In the case of protective custody, that separation is for the purpose of protecting the life of an inmate who claims his life is endangered and, upon investigation of that claim, the threat is substantiated and verified.  Because inmates assigned to protective custody are a vulnerable population, placement of an inmate in that housing assignment who does not meet the criteria presents a possible threat to the inmates confined there with a verified threat against their lives.  *Id.*  Germain has no verified threat to his safety.

---

[4]        Licensed Clinical Professional Counselor.

With regard to Germain's panic attacks, defendants deny that Dr. Ashraf attributed Germain's rapid heart rate to his fear of accepting a cellmate and further deny that Dr. Ashraf instructed anyone to provide Germain with a single cell.[5] ECF 24 at Ex. 3, pp. 1 – 2 (declarations under oath by Christopher Anderson and Nicholas Soltas, respectively). The alleged March 9, 2015 encounter with Ashraf was prompted by Germain's hunger strike. *Id.* at Ex. 3, pp. 19 – 26. In the medical record prepared by Ashraf, it is noted that Germain "looks dehydrated" and reported feeling weak. *Id.* at p. 21. Germain was given IV fluids and advised to begin eating and drinking water again to improve his health. *Id.* Ashraf describes Germain as anxious, but does not attribute that to Germain's fear of a cellmate or any other specific person or event. *Id.* Ashraf noted that Germain was already receiving medication for anxiety, therefore it is not addressed during this encounter. *Id.* On the following day, Germain is described as "feeling better" and reported "he is fine." *Id.* at p. 23.

In opposition, Germain submits declarations under oath from two inmates who are also confined at NBCI, Maurice Stewart, Jr. and Steven Tarpley. ECF 26 and 26-1. Stewart alleges it is common practice at NBCI to place sexual predators and gang members into cells with other inmates. ECF 26 at p. 1. Stewart claims his complaints regarding the practice have never been addressed. *Id.* He further alleges that officers instigate and encourage inmate-on-inmate attacks, "paying" Stewart's "cellmates extra food to jump on [him], beat [him] or stab [him] or try to kill [him]." *Id.* at p. 2. Stewart states that on September 29, 2014, officers forced him into a cell with Eric Bogues, with whom Stewart had previous problems. *Id.* Despite warning the officers he feared Bogues, Stewart claims he was put into the cell restrained and Bogues was permitted to assault and almost killed him. *Id.* The assault occurred, according to Stewart, during security

---

[5]     Dr. Ashraf is not a part of the psychology staff and there is no allegation that Germain requires a single cell due to physical limitations caused by a medical condition.

rounds but the officers ignored his cries for help. *Id.* When Stewart was taken out of the cell, he claims he was assessed in the medical unit and sent by ambulance to the hospital, where he was admitted and "diagnosed with trauma to [his] entire body." *Id.* at p. 3.   Stewart claims the staff at NBCI has a long history of forcing inmates into double cells without regard to their safety and are "still setting up cell fights." *Id.*

In his declaration, Tarpley claims that the cells at NBCI are designed to house one inmate alone, but are used to confine two inmates. ECF 26-1 at p. 2.   He further claims that custody staff frequently engage in "vexatious cell assignments" for inmates who are known as litigious or who "otherwise challenge any of the many wrongs they do." *Id.* Tarpley alleges he has been the victim of such cell assignments when he was put into a cell with members of security threat groups in an attempt to instigate a fight so that he would be sent back to disciplinary segregation. *Id.* He further claims he was housed with an inmate who suffered from paranoid schizophrenia and thought Tarpley was the devil conspiring with the police to steal his mail. *Id.* Tarpley claims that Germain was housed in the same housing unit with him from January 21, 2015 to March 22, 2015, the date of Tarpley's declaration. *Id.* at p. 3. Tarpley claims that Germain's cellmate was "mentally deranged" and that it was apparent he was hearing voices. *Id.*

Notwithstanding Germain's opposition response, he has filed a motion for discovery pending summary judgment. ECF 29. Germain states that there is a recommendation in his mental health record from Laura Moulden stating he should "never be double celled while in the segregation unit." ECF 29 at p. 3. Germain further cites to the 2009 case he filed in this court where it was observed that Germain has been diagnosed with an anxiety disorder and had a history of violence toward a cellmate, making his assignment to a double cell ill-advised. *Id.* at pp. 3 – 4. He further asserts that he should be allowed to "adduce evidence" that double-celling

is not safe at NBCI, citing the Stewart and Tarpley declarations. *Id.* at pp. 4 – 5. Germain alleges there is evidence in his base file that tends to show defendants Miller, Bishop, and the chief of security at NBCI were told about assaults against him. *Id.* at p. 6. He also seeks his record of segregation confinement with the officer's notes so that he can establish he refused to allow Bailey to come back into his cell. *Id.* Germain states this would prove he was complaining specifically about Bailey to the officers. *Id.* at p. 7. Germain also seeks to discover evidence from Dr. Ashraf to establish his heart rate reached 144 and that he was having a panic attack when seen by Ashraf. *Id.* Because Liller asserts that Germain does not need a single cell for psychological reasons, Germain seeks to discover the criteria for single cell assignment for psychological reasons. *Id.* at p. 8. Further, Germain seeks discovery of the investigative report and tier video recordings that pertain to the macing incident where Germain claimed Officer Soltas "shoved a mace can between [Germain's] butt cheeks." [6] *Id.* at pp. 8 – 9. Finally, Germain asserts he requires access to pertinent Inmate Grievance Office ("IGO") files to prove he complied with all directives required for proper exhaustion of administrative remedies. *Id.* at p. 9.

## Discovery Pending Summary Judgment

There has been no Scheduling Order issued in this case setting forth deadlines for discovery. *See* Local Rule 803.1 (D. Md. 2014). Absent a Scheduling Order, the parties are not ordinarily entitled to engage in discovery. Federal Rule of Civil Procedure 56(d) provides that:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts to justify its opposition, the court may:
>
> (1) Defer considering the motion or deny it;
> (2) Allow time to obtain affidavits or declarations or to take discovery; or
> (3) Issue any other appropriate order.

---

[6] This claim of excessive force is raised for the first time in the motion for discovery and shall be dismissed without prejudice. Germain remains free to file a separate cause of action regarding this incident.

Ordinarily, summary judgment is inappropriate "where the parties have not had an opportunity for reasonable discovery." *E.I. du Pont De Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448-49 (4th Cir. 2012). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996)). To raise adequately the issue that discovery is needed, the non-movant typically must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition," without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)) Notably, "'Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery.'" *Hamilton v. Mayor & City Council of Baltimore*, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (quoting *Young v. UPS*, No. DKC-08-2586, 2011 WL 665321, at *20 (D. Md. Feb. 14, 2011)). "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be 'essential to [the] opposition.'" *Scott v. Nuvell Fin. Servs., LLC*, 789 F. Supp. 2d 637, 641 (D. Md. 2011) (alteration in original) (citation omitted). A non-moving party's Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995); *see Amirmokri v. Abraham*, 437 F. Supp. 2d 414, 420 (D. Md. 2006), *aff'd*, 266 F. App'x. 274 (4th Cir. 2008).

Germain misrepresents the nature of the mental health record prepared by Laura Moulden and submitted as an exhibit in the 2009 case before this court. *See Germain v. Shearin, et al.,* Civil Action JFM-09-3097 (D. Md. 2010) at ECF 11, Ex. 1, pp. 3 – 4.  On November 3, 2009, the following was noted about Germain's single cell status:

> He is making an argument for why he needs a single cell and this writer attempts to explain to him that there is no need to become argumentative or defensive with this writer as I am the one who assigned him to a single cell for 3 months.  I explain that he needs to understand that his very statement of knowing that he will try to hurt a cellmate if given one is an indication of his competency and that he would be held responsible for his behavior.  I also explain that I gave him the single cell because of the severity of his prior incident with a cellmate and so that he could have an opportunity to discuss coping skills for the future, as he cannot be guaranteed a single cell for the rest of his life.  He is not easily redirected, however, to discuss coping skills, as he continues to argue his case for needing a single cell.  This writer emphasizes that he will be moved from this housing unit and will need to regain single cell status with a job or otherwise by talking to his housing unit psychologist.

*Id.*  Contrary to Germain's assertion, it is clear from this record that he was never told or promised he would continue to be housed in a single cell.

Germain's assertion he has been diagnosed with an anxiety disorder is not disputed by defendants and is reflected in the records submitted in support of the motion to dismiss or for summary judgment.  In addition, Germain submits as an exhibit to the complaint a progress note that indicates Germain would continue to be single celled for security, not psychological, purposes.  ECF 1-1, p. 1.  The note also indicates that Germain's diagnosis of anxiety is not a serious psychiatric diagnosis in light of the fact that the symptoms he experiences are a common reaction to incarceration.  *Id.*   In addition, Germain's assertion that he needs to engage in discovery to determine what the criteria are for a psychologically based single cell assignment disregards the individual nature of such a task.  Defendants have provided the regulations that apply for assignment to special confinement housing (ECF 24 at Ex. 3, pp. 6 – 17), thus the

objective criteria have been provided to Germain. The subjective criteria hinge on the professional judgment of those assigned to assess such a need. The stated requirement for discovery is not sufficient to create a genuine dispute of material fact justifying denial of summary judgment.

Germain also seeks to conduct discovery in order to establish that he was complaining about Ron Bailey to defendants Miller and Bishop and that he refused to allow Bailey back into his cell. Bailey was moved into Germain's cell on March 3, 2015. ECF 13 at p. 4. The next day, Germain resisted having the feed-up slot closed on his cell door, resulting in a use of force against him that included application of mace and forcible removal of Germain from his cell. *Id.* Germain averred in a declaration under oath that on March 24, 2015, he allowed Bailey back into the cell. ECF 14 at pp. 1 – 2. All of Germain's pleadings in this case have asserted that his need for single cell housing assignment is based on his anxiety; he did not claim that he warned defendants about a specific known risk of harm presented by inmate Bailey. In copies of his ARPs and in his declaration in support of discovery, Germain states that the primary effect of having a cellmate is his inability to urinate or defecate in front of a cellmate, causing stomach discomfort, and that having a cellmate is causing him to suffer severe anxiety attacks. ECF 13 at pp. 2 – 3. The requested discovery does not pertain to facts material to the claims raised in the complaint.

Germain's claim that he requires a period of discovery to establish that on a single occasion he suffered a panic attack, is also not sufficient to warrant discovery. Whether Germain suffered a panic attack on the day in question does not, without more, establish that he meets psychological requirements for assignment to a single cell. Thus, discovery of that evidence does not create a genuine dispute of material fact that would justify denial of summary judgment

if established.

With respect to evidence regarding administrative remedy exhaustion, this court finds for reasons set forth below that notwithstanding Germain's exhaustion of administrative remedies, the complaint is subject to dismissal on summary judgment in light of the evidence provided concerning Germain's psychological status. Thus, there is no need for discovery of evidence to refute the defense asserted. The motion for discovery pending summary judgment (ECF 29) shall be denied.

<h3 align="center">Standard of Review</h3>

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). The court

must, however, also abide by the "affirmative obligation of the trial judge to prevent factually

unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal

quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and

citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

## Analysis

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue

of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173

(1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized

by statute and imposed by a criminal judgment." *De Lonta v. Angelone*, 330 F. 3d 630, 633 (4th

Cir. 2003) citing *Wilson v. Seiter*, 501 U.S.294, 297 (1991).

In order to state an Eighth Amendment claim for denial of medical or psychological care,

a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to

deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106

(1976). Deliberate indifference to a serious medical or psychiatric need requires proof that,

objectively, the prisoner plaintiff was suffering from a serious medical need and that,

subjectively, the prison staff were aware of the need for medical attention but failed to either

provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837

(1994). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*,

503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified

access to health care). There is no underlying distinction between the right to medical care for

physical ills and its psychological and psychiatric counterpart. *Bowring v. Goodwin*, 551 F.2d

44, 47 (4th Cir. 1977). A prisoner is entitled to such treatment if a "[p]hysician or other health

care provider, exercising ordinary skill and care at the time of the observation, concludes with

reasonable certainty (1) that the prisoner's symptoms evidence a serious disease or injury; (2) that such disease or injury is curable or may be substantially alleviated; and (3) that the potential for harm to the prisoner by reason of delay or the denial of care would be substantial." *Id.* The *Bowring* Court further concluded that the aforementioned right to such treatment is based upon the essential test of medical necessity and not upon that care considered merely desirable. *Id.* at 48.

Germain's claim with regard to psychological care is that he suffers from an anxiety disorder which requires his assignment to a single cell. ECF 1. Germain appears to claim that this requirement applies when he is assigned to disciplinary segregation in particular. *See* ECF 24 at Ex. 6, p. 32 (Germain's argument at an adjustment hearing that whenever he is assigned to housing unit 1 a psych alert applies to his housing assignment). Germain bases that assertion on an alert that was in place in 2011; however, there is no evidence that a similar alert has been issued by psychology staff and was in effect at the time the instant complaint was filed. To the contrary, the evidence in this case, as well as the 2009 case filed by Germain, indicates that psychology staff had as their goal to encourage Germain to accept a cellmate. To the extent that Germain disagrees with psychology staff's view that his anxiety is not a serious condition warranting a permanent housing alert, his disagreement is not enough to establish an Eighth Amendment claim. Defendants are entitled to summary judgment in their favor on this claim and the injunctive relief awarded previously requiring plaintiff to be single-celled shall be lifted.

To the extent Germain alleges defendants have failed to protect him from the violence of another inmate, the complaint fails to state a viable claim. In order to prevail on an Eighth Amendment claim of failure to protect from violence, Germain must establish that defendants exhibited deliberate or callous indifference to a specific known risk of harm. *See Pressly v.*

13

*Hutto*, 816 F. 2d 977, 979 (4th Cir. 1987). "Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penologicial objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer v. Brennan*, 511 U.S. 825, 833-34 (1994) (citations omitted). "[A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety, the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837, *see also Rich v. Bruce*, 129 F. 3d 336, 339-40 (4th Cir. 1997).

Germain's complaints about his cellmate, Ron Bailey, was that he created a disturbance in the cell on a regular basis by banging on the walls and that he appeared to be actively psychotic because he was responding to voices only he could hear. The declarations under oath from other inmates averring that they have experienced an alleged practice of "vexatious cell assignments" is not evidence that in this instance Bailey presented a known risk of harm to Germain. The chief complaint at issue in this case is Germain's claim that *any* cellmate causes him anxiety attacks. The attempt to bootstrap a claim indicting the entire process of cell assignments is factually incongruous to the claim asserted. Defendants are entitled to summary judgment on this claim.

A separate order follows.

2/15/16
Date

J. Frederick Motz
United States District Judge

2016 FEB 16  AM 11:55

FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

BY _____ DEPUTY

14